# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| United States of America, | Case No. 3:19CR403 |
| Plaintiff, | |
| v. | **ORDER** |
| Marlon D. Grant, | |
| Defendant. | |

This is a criminal case in which the grand jury indicted the defendant, Marlon D. Grant, and two codefendants with drug offenses. Pending is his motion to suppress six search warrants issued *seriatim* (Doc. 20), which the government opposes (Doc. 21).

Sandusky Police Department Detective Ronald Brotherton obtained all six warrants on the same day, March 2, 2019. (Doc. 20, Exh. 1-6). The first four were for 501 Tiffin Avenue, Sandusky, Ohio, where Grant rented a store front and a rear apartment. The last two were for Grant's residence, which also had a store, at 1001 Monroe Street, Sandusky, Ohio.

After Det. Brotherton obtained the first warrant, officers began their execution of it. Det. Brotherton returned from time to time for the other five warrants. He had done so, he stated in the first warrant for 1001½ Monroe St., to obtain "narcotics warrants." (*Id.*, Exh. 5, ¶ 41, PageID 179).

The affidavits for the first four warrants were duplicates. The affidavits for the last two also had those contents, but they also stated that officers had: 1) found suspected crack cocaine, marijuana, and firearms at 501 Tiffin; and 2) located Grant at 1001½ Monroe and arrested him.

The defendant agues that the affidavits for all six warrants lack underlying probable cause and are overbroad. The government disputes this contention and argues that, in any event, the good faith exception applies.

For the reasons that follow, I find that there was probable cause for each of the warrants and that they were not overbroad. Had I found otherwise as to either, I would have applied the good faith exception.

Accordingly, I overrule the motions to suppress.

**Background**

The duplicative affidavits that Det. Brotherton presented as to the first four warrants related principally to a confidential source's (CS 1) controlled buy of crack cocaine from Grant.

Detective Brotherton began his narrative of those events by stating that: 1) around the end of May or early June, 2018, Task Force Officer DEA Agent/SPD Adam West learned that Grant was supplying large amounts of cocaine in Sandusky; and 2) on February 1, 2019, CS 1 had told officers that he could get fourteen grams of crack cocaine from Grant.

On March 20th, officers fitted CS 1 with a concealed recording unit. CS 1 called Grant on his cell phone; they had a drug-related conversation. Thereafter, officers gave CS 1 $700 in buy money. In the meantime, officers saw Grant leave his residence at 1001½ Monroe St. and go to 501 Tiffin Avenue.

Grant and CS 1 had a further phone call, in which Grant told CS 1 that crack cocaine was in a potato chip bag on the informant's front steps. The informant retrieved the bag and gave it to the officers, along with the $700 buy money they had given him - Grant had agreed during a phone call to get back with CS 1. (Doc. 20, Exh. 1 ¶¶ 5-21, PageID 225).

2

The next day, March 21, 2019, again while wired, CS 1 went to Grant's residence at 1001½ Monroe St. Grant was not there. CS 1 called Grant, who told him to put the $700 (which the officers had presumably given back to CS 1) in the console of his van (a white Ford Windstar). CS 1 did so.

Officers surveilled Grant driving his BMW to 1001½ Monroe St. He parked, got into the passenger side of the Windstar, then got out and got into and out of a white Buick Park Avenue (registered, like the BMW and Windstar, to Grant). Grant drove the Windstar to 501 Tiffin Avenue and parked it there.

CS 1 spoke with Grant, who told him he had gotten the buy money. (*Id.*, ¶¶ 22-34),

Detective Brotherton's affidavit stated that he and a fellow officer had seen Grant "numerous" times driving to 501 Tiffin St., park in the rear, enter the building, and leave shortly thereafter. This sort of behavior, according to the affiant, "is indicative of narcotics traffickers," who often use "secondary locations" – in common parlance, a "stash house" – like Grant's "to store and protect their products." (*Id.*, ¶¶ 25-37, PageID 226).

On checking with the owner of 501 Tiffin Avenue, the affiant learned that Grant rented the front store and rear apartment. (*Id.*, ¶ 38, PageID 226). Grant had a conviction for attempted trafficking in 2000 and a domestic violence charge reduced to a lesser offense. (*Id.*).

Based on Detective Brotherton's training and experience, the affidavit lists items that drug dealers commonly use and keep at locations such as 501 Tiffin Avenue. (¶¶ 39-59, PageID 227-29). The warrant essentially incorporated that list *in toto*. (Doc. 20–4, PageID 162).

In support of the last two search warrants – for 1001½ Monroe St. – Detective Brotherton's affidavit duplicated the affidavits for 501 Tiffin. It added facts occurring after the officers started executing searches at 501 Tiffin.

The affidavit stated that officers had located Grant at the Monroe St. premises. They arrested him for possession of the firearms and drugs they had found at 501 Tiffin. He admitted the guns were his.

The officers asked him if he had weapons, drugs, or U.S. currency. He admitted having "a few" dollars. He showed them where the currency was; it amounted to $6,000. He was searched incident to his arrest. (Doc. 20–5, ¶ 42, PageID 179). He had prior convictions for attempted trafficking in 2000 and a reduced offense on a domestic violence charge. (*Id.*, ¶ 43).

There followed the same list of items that Detective Brotherton had stated in the earlier affidavits, all of which, Brotherton asserted, on the basis of his training and experience and drug investigation, drug dealers commonly used and kept. (*Id.*, ¶ 43, PageID 179).

The two Monroe St. warrants repeated the condensed version of that list in their authorization of the things for which the officers could conduct their searches and seizures.

## Discussion

In determining whether an affidavit for a search warrant provides probable cause sufficient to justify the warrant's issuance, I do not engage in *de novo* review. *Illinois v. Gates,* 462 U.S. 213, 236 (1983). I am, rather, to give deference to the issuing judge's probable cause finding. *Id.* If the affidavit shows a "fair probability" that the items sought to be seized are then on the premises, then probable cause exists. *Id.* at 238.

Applying these factors, I have no hesitation in finding that the affidavits showed probable cause that Grant was a drug dealer. Indeed, there is direct evidence to that effect: the sale to CS 1.

Moreover, he was clever in how he did his dealing. Unlike those who expose themselves by dealing directly hand-to-hand with others, defendant, like a spy, used a vehicular equivalent

of a "dead drop" or "dead letter box." It was also apparent that it was likely he had prospered at his trade, as he was seen driving three different cars, none of which sounds off-the-shelf cheap.

I also agree with the government that there was probable cause as to both premises. While 501 Tiffin was likely to hold drugs and related paraphernalia, the same was true with regard to 1001½ Monroe. This would have been particularly true for items not needed for daily "operations" – *i.e.*, sales to customers – such as books and records, wherever and however kept – either on paper or digitally.

There appears, though, to be a disconnect between the premises and the items to be sought and seized at each premises. Some, perhaps many, of the items in the list of things to be seized at 501 Tiffin would seem more likely to be found at 1001 ½ Monroe – and vice-versa. (*Compare* Doc. 21–1, PageID 218–19 ("Property to be searched and seized") *with* Doc. 21 –6, PageID 290 (same)).

On the other hand, the defendant's brief itemizes no specific items that he contends are outside the scope of the warrant; he merely makes a generic claim of lack of particularization. I am inclined to reject that characterization: there is much as to which there was probable cause

To the extent that there may be possible overbreadth – and that remains to be seen through the supplemental briefing that I am ordering herein – the issues seem to be: 1) whether there was probable cause as to the premises to be searched – *i.e.*, that each would contain some or all of each of the listed items; 2) if so, were there, nonetheless, items on the list as to which the affidavits failed to show probable cause; 3) if so, did the officers seize any such items; 4) if so, could such seizure be excused on the plain view doctrine; and 5) if not, does the good faith doctrine allow any such items to remain admissible?

The above might be premature or off the mark: the record does not contain the return on the warrant, which is a necessary starting point. At that point the parties can, in light of what was seized and their readings of the diverse "[p]roperty to be searched and seized" provisions in the warrants for 501 Tiffin Avenue and 1001½ Monroe Street, make their arguments accordingly.

It is, therefore,

ORDERED THAT:

1. The government shall forthwith file, as a supplement to its brief, a typewritten list of the items seized, as stated in the return on each of the warrants; and

2. The defendant shall, within three weeks of the date of this order file his supplemental brief in accordance herewith; the government shall file its supplemental opposition thereto within three weeks thereafter; the defendant shall file his supplemental reply, if he desires to do so, within two weeks thereafter. If either party desires oral argument, it shall notify the undersigned as promptly as possible, and not later than the date of filing of the defendant's opening supplemental brief.

So ordered

/s/ James G. Carr
Sr. U.S. District Judge